FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SARAH A.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, the Commissioner of Social Security,[2]

        Defendant.

No.    4: 19-CV-05032-EFS

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S SUMMARY-JUDGMENT MOTION**

       Before the Court are the parties' cross summary-judgment motions.[3]

Plaintiff Sara A. appeals the denial of benefits by the Administrative Law Judge

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 9 & 10.

(ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's mental impairments; 3) discounting Plaintiff's symptom reports; 4) improperly determining that the impairments did not meet or equal a listed impairment; 5) failing to properly consider lay statements; and 6) improperly determining step five based on an incomplete hypothetical question to the vocational expert. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants in part and denies in part Plaintiff's Motion for Summary Judgment, ECF No. 9, and grants in part and denies in part the Commissioner's Motion for Summary Judgment, ECF No. 10.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

---

[4] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[5] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(b), 416.920(b).

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

---

[8] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(c), 416.920(c).

[11] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[12] *Id.* §§ 404.1520(d), 416.920(d).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II.     Factual and Procedural Summary

Plaintiff filed a Title II and XVI application, alleging a disability onset date of December 1, 2011.[19] Plaintiff meets the insured status requirements through June 30, 2013.[20] Her claim was denied initially and upon reconsideration.[21] A video

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 84 & 134.

[20] AR 133-34.

[21] AR 17.

administrative hearing was held before Administrative Law Judge Jesse Shumway.[22]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: peripheral neuropathy, ulcerative colitis status post colectomy, juvenile-onset inflammatory arthritis, and cervical degenerative disc disease;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work except:

  she could never crawl or climb ladders, ropes, or scaffolds, and she could only occasionally balance, stoop, kneel, and crouch; she would need to have ready access to restroom throughout the workday; she would be limited to frequent handling, fingering, and feeling; she could have no exposure to extreme cold or heat, vibration, or hazards (such as unprotected heights or moving mechanical parts); and she must avoid concentrated exposure to pulmonary irritants.

- Step four: Plaintiff was not capable of performing past relevant work; and

---

[22] AR 38-83.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as cashier, final assembler, charge account clerk, and addressor.[23]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of medical experts Robert Smiley, M.D.[24] and Jay Toews, Ed.D., and medical evaluators Wayne Hurley, M.D., Howard Platter, M.D., and Dan Lowe, Ph.D.;

- partial weight to the opinions of state agency evaluators Vincent Gollogly, Ph.D. and Eugene Kester, M.D.[25]; and

- little weight to the opinion of Dan Lowe, Ph.D. regarding Plaintiff's physical issues.[26]

---

[23] AR 15-29.

[24] The ALJ assigned great weight to Dr. Smiley's opinion except for his statements related to Plaintiff meeting Listing 14.09. AR 25.

[25] Specifically, the ALJ assigned great weight to Dr. Gollogly and Dr. Kester's opinions regarding memory, social interaction, and adaptation limitations, and assigned little weight to their opinions regarding difficulty in sustaining concentration. AR 27.

[26] AR 25-27.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[27] And the ALJ gave little weight to the lay testimony of Plaintiff's mother.[28]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[29] Plaintiff timely appealed to this Court.

### III.  Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[27] AR 23.

[28] AR 27.

[29] AR 144.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[33] The Court considers the entire record as a whole.[34]

Further, the Court may not reverse an ALJ decision due to a harmless error.[35] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[36] The party appealing the ALJ's decision generally bears the burden of establishing harm.[37]

### IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes error.**

Plaintiff argues the ALJ erred by assigning little weight to Dr. Lowe's opinion regarding Plaintiff's physical issues. The Court agrees. Plaintiff also argues the ALJ erred by rejecting parts of Dr. Smiley's testimony. The Court disagrees.

---

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[34] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[35] *Molina*, 674 F.3d at 1111.

[36] *Id.* at 1115 (quotation and citation omitted).

[37] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[38] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician.[39] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[40] The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[41]

1.   Dr. Lowe.

Dr. Lowe completed a medical status report for Plaintiff on May 31, 2015.[42] Dr. Lowe diagnosed Plaintiff under diagnostic code 309.0 with adjustment disorder with depressed mood, and under diagnostic code 307.89 with pain disorder with psychological and medical factors. Dr. Lowe opined that Plaintiff was "unable to

[38] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[39] *Id.*

[40] *Id.*

[41] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[42] AR 434-436.

complete a normal workday due to the fatigue and pain and impact of her chronic medical conditions on her ability to focus and persist in tasks, having to pace herself."[43] Dr. Lowe explained Plaintiff presented as outgoing, engaging, friendly, and logical, and as making an effort to sustain a positive adaptive approach to life, despite Plaintiff's impairment of Plaintiff's ability to engage in sustained physical effort. Dr. Lower further explained there was no estimate about the frequency of errors, time needed to complete tasks, or the extent to which supervision would be needed. Dr. Lowe also explained that Plaintiff at times gets worn down, and can become depressed and anxious, but continues to be highly motivated to push back against her illness.

The ALJ assigned Dr. Lowe's opinion "generally great weight" because he was familiar with Plaintiff's limitations as her treating provider, his opinion was consistent with the longitudinal record, and supported by reasonable explanation. However, the ALJ gave little weight to Dr. Lowe's opinion regarding physical issues, something the ALJ found was outside Dr. Lowe's expertise, such as Plaintiff's inability to complete a normal workday because of fatigue and pain secondary to her medical conditions.[44]

Here, the ALJ incorrectly asserted that Dr. Lowe's opinion was based on Plaintiff's physical impairments and not on her psychological impairments. Though

---

[43] AR 435.

[44] AR 27.

"the regulations give more weight to . . . the opinions of specialist concerning matters relating to their specialty over that of no specialists," this is not a situation where a psychologist impermissibly opined about a physical impairment and rendered conclusions based on the limitations caused by the physical impairment. Such an opinion would be outside the expertise of a psychologist. Rather, Dr. Lowe diagnosed Plaintiff with a pain disorder associated with both psychological factors and general medical conditions.[45] He opined that because of the impact on Plaintiff's "ability to focus and persist in tasks," due to Plaintiff's "fatigue and pain" from "her chronic medical conditions," Plaintiff "is unable to complete a normal workday."[46] Dr. Lowe's psychological diagnosis and opinions necessarily touched on Plaintiff's physical condition, which was within the Dr. Lowe's area of expertise as a psychologist.[47]

---

[45] Dr. Lowe diagnosed Plaintiff with "309.0: Adjustment disorder with depressed mood; [and] 307.89: Pain disorder with psychological and medical factors. Diagnostic code 307.89 "is used where both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 499 (4th ed. text. Rev. 2000).

[46] AR 435.

[47] *See Aponte v. Astrue,* No. C11-5671-JCC-BAT, 2012 WL 2882988, at *4 (W.D. Wash. June 7, 2012), *report and recommendation adopted*, No. C11-5671-JCC, 2012 WL 2882751 (W.D. Wash. July 12, 2012) (determining the ALJ erred in discounting

Accordingly, the ALJ erred in discounting Dr. Lowe's opinion as outside his expertise.

2. **Dr. Smiley.**

Dr. Smiley testified as an impartial medical expert during Plaintiff's administrative hearing. Dr. Smiley opined Plaintiff has juvenile inflammatory arthritis, which is reasonably controlled by monotherapy; recurring problems with pouch from a total colectomy, which was necessary from ulcerative colitis; cervical spondylosis with cervical pain headaches, but that no x-rays were in the record to confirm; vestibular arteries, which could cause momentary blindness; asthma that is well controlled; and chronic pain controlled with opioids.[48] Dr. Smiley further opined that Plaintiff, prior to becoming pregnant, was sedentary at best and met

_____

a doctor's opinion as outside of her expertise where the doctor diagnosed the plaintiff with a pain disorder under diagnostic code 309.89, caused by both psychological factors and general medical condition); *Mays v. Carolyn W. Colvin*, No. 14-cv-05652-JRC, 2015 WL 363045, at *3 (W.D. Wash. Jan 27, 2015) (The ALJ erred by discounting the opinion of a mental health provider where it was based in part on the plaintiff's pain. The court found that limitations from that condition – including diminished attention, concentration, and performance – were within the provider's expertise.)

[48] AR 44-47.

Listing 14.09, but that she is now caring for her infant daughter, which is more than sedentary work and thus no longer meets 14.09.

The ALJ gave great weight to Dr. Smiley's opinions except that Plaintiff met Listing 14.09 prior to pregnancy. The ALJ discounted Dr. Smiley's opinion regarding meeting Listing 14.09 prior to pregnancy because it was inconsistent with the treatment records. Plaintiff argues the ALJ's reasoning was inadequate boilerplate language and failed to identify a single treatment record inconsistent with Dr. Smiley's findings.

In this regard, the ALJ stated:

I assign great weight to most of Dr. Smiley's opinion. However, some of his statements, such as [Plaintiff] meeting listing 14.09 before her pregnancy, were inconsistent with the treatment records discussed above.[49]

In regard to the treatment records discussed in relation to whether Plaintiff met Listing 14.09, the ALJ stated:

[Plaintiff] does not meet listing 14.09A because the record does not show the inability to ambulate effectively or perform fine and gross movements effectively. The objective record showed she had a normal gait, could attend exercise classes, walked her dog regularly, cared for young children, and could paint and sculpt (Ex. 1 lF, p. 6; Ex. 12F, p. 3; Ex. 15F, p. 1; Ex. 17F, p. 3; See generally Ex. 19F). [Plaintiff] does not meet section "B" because her inflammatory bowel issue was resolved with a colectomy. Robert Smiley, M.D., the impartial medical expert at the hearing, testified that while she did have some issues with her pouch, the severity of her impairment did not meet this listing. The record supports his opinion, as there was no evidence of two or more body systems involved in at least a moderate level of severity. While the record referenced a history of ankylosing spondylitis, there is no

---

[49] AR 25.

imaging to confirm the condition so she cannot meet section "C" (Ex. llF, pp. 3-10). Dr. Smiley also testified that he did not see confirming evidence in the record to support this condition. The claimant does not meet section "D" because the claimant does not have a marked level of limitation in activities of daily living, social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.[50]

The ALJ went on to cite specific activities of daily living Plaintiff was able to complete prior to her pregnancy.[51] The Court finds the ALJ articulated adequate reasoning and analysis supported by substantial evidence.[52] In light of these records referenced by the ALJ, that Dr. Smiley's 14.09 listing prior to pregnancy opinion was inconsistent with the other treatment records was a clear-and-convincing reason to discount Dr. Smiley's opinion.

---

[50] AR 21.

[51] *See id.*

[52] The ALJ must support his listings finding with more than a boilerplate finding that a listing was not satisfied: the finding may be supported by the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process" so long as the Court can meaningfully review the basis for the step-three decision. Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

**B.      Plaintiff's Symptom Reports: Plaintiff establishes error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[53] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[54] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, activities of daily living, and weak work history extending years before her alleged onset date.[55]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[56] However, medical evidence is a relevant factor in considering

---

[53] *Molina*, 674 F.3d at 1112.

[54] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[55] AR 23.

[56] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

the severity of the reported symptoms. [57] Plaintiff reported bowel flare ups and

arthritis flare ups occurring a minimum of five days a month.[58] During flare ups,

Plaintiff reported symptoms of spending half a day in the bathroom and an

inability to get out of bed outside using the bathroom and kitchen.[59] The ALJ

discounted Plaintiff s bowel flare ups because the medical records reflected few

complaints of significant abdominal symptoms.[60] While failure to report symptoms

to treatment providers is a legitimate consideration in determining credibility,

Plaintiff reported abdominal symptoms on multiple occasions.[61] As such, the Court

---

[57] *Id.*

[58] Plaintiff reports bowel flare ups 5-6 times a month and arthritis flare ups 7-8 times a month – both flares up occur independently, but often overlap. AR 68-69.

[59] AR 69.

[60] The ALJ cited to other medical evidence but failed to cite to anything addressing arthritis flare ups and their frequency.

[61] *Lesher v. Comm'r Soc. Sec.*, No. 2:15-CV-00237-SMJ, 2018 WL 314819, at *6 (E.D. Wash. Jan. 5, 2018) (citing *Gregor v. Barnhart*, 467 F.3d 972 (9th Cir. 2006); *see* AR 357 ("[Plaintiff] had a spell of abdominal pain, diarrhea, nausea, committing and had to go to the hospital for dehydration and has not done well since that which was a week or two ago."); AR 446 (complaints of reoccurring abdominal pain – four times a month); AR 449, 574, 580, 602, 678, 680 (general complaints of abdominal pain); AR 446 (reports urgent diarrhea).

finds the ALJ's summary of the objective medical evidence fails to sufficiently explain how Plaintiff's flare ups, and their frequency, are inconsistent with the medical record.

Second, though the ALJ repeatedly pointed to Plaintiff's responsibilities caring for her young daughter as a reason for rejecting her disability claim, the record provides no details as to what Plaintiff's regular childcare activities involved outside Plaintiff's own testimony. But the mere fact that Plaintiff cares for her small child does not constitute an adequately specific conflict with her reported limitations.[62] Moreover, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[63] That appears to be the case

---

[62] *See Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017) (The ALJ erred when "[h]e failed to acknowledge that, over and over in the same report, [plaintiff] explained that she could only complete some of the tasks [bathroom, brushing her teeth, washing her face, taking her children to school, etc.] in a single day and regularly needed to take breaks.");*Vertigan v. Hatler*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]his court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

[63] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

here. Plaintiff's childcare responsibilities permit her to nap, rest, and sit with a heating pad while Plaintiff's mother or significant other helps take care of Plaintiff's daughter.[64] While Plaintiff admits being able to care for her daughter on "good days," Plaintiff testified that her mother comes over on days when Plaintiff has a flare up. Plaintiff also testified that her significant other works from home three days a week and her mother visits at least once a week to help care for Plaintiff's daughter.[65]

Moreover, consistent with Plaintiff's testimony, Dr. Smiley opined Plaintiff would not be able to work during bad flares. The record shows during "good times" Plaintiff was able to walk her dog, play videogames, read, and shop at bookstores.[66]

---

[64] AR 64.

[65] AR 63 90, 102, 399, 435, 441.

[66] AR 102 (Plaintiff enjoys videogames and taking her dog to the park as pain/fatigue allow.) AR 399 (Plaintiff reports "[w]hen I'm good, I'm really good."); AR 399 (exercise consists of walking dog 10-15 minutes) AR 435 (Plaintiff is active in reading, playing videogames and taking her dog to the park, as tolerated related to physical pain and fatigue.") AR 75-76 ("Q: And are you able to do like reading like you said you might do like an hour through a day normally? Is that something you still do on - - during a flare? A: No. During a flare, it's - - I try to sleep as much as I can and kind of try to nurse myself back to normal, so I'm not doing anything extra.")

But these activities were completed when Plaintiff had no flare ups.[67] Plaintiff testified that flare ups occur five to eight days a month depending on the type of flare up. Dr. Smiley testified that he was unable to determine how many flare ups occurred but noted rheumatologist noted Plaintiff was having flare ups consistent with Plaintiff's testimony, but that the notes were over optimist and may have understated her bad days.[68] Consequently, the ALJ failed to meet the high bar of rejecting a plaintiff's symptom testimony.[69]

Lastly, while work history factors into Plaintiff's credibility, weak work history alone is not sufficient to discount Plaintiff's reported symptoms.[70] The ALJ

---

[67] *See Verigan*, 260 F.3d at 1050 ("[A]ctivities such as walking in the mall and swimming are not necessarily transferable to work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for longer period given the pain involved.")

[68] AR 50 & 52.

[69] *See Revels*, 874 F.3d at 668.

[70] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding credibility finding where one of the factors considered by the ALJ was the claimant's "extremely poor work history" and lack of a propensity to work in her lifetime); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate

recognized Plaintiff "has a weak work history extending years before her alleged onset date, suggesting that the primary explanation of her ongoing unemployment is likely something of longer standing than her current medical conditions." However, the record shows Plaintiff has an onset date of December 1, 2011, and stopped working in early 2012. Plaintiff had just turned twenty-three at the time she stopped working. Moreover, the record shows a history of adolescence medical issues.[71] On this record, Plaintiff's weak work history is insufficient to discount Plaintiff's reported symptoms.[72]

In summary, the ALJ's reasons for rejecting Plaintiff's symptom reports are not supported by substantial evidence.[73]

---

a lack of motivation to work rather than a lack of ability" and may be considered in the context of evaluating claimant's subjective complaints.).

[71] AR 44 (total colectomy for ulcerative colitis 2003); AR 14 (juvenile-onset arthritis in 2004).

[72] *See Albidrez v. Astrue*, 504 F. Supp. 2d. 814, 822 (C.D. Cal. 2007) (upholding ALJ decision on plaintiff's credibility based on work history when plaintiff had never worked); *Thomas*, 278 F.3d at 959 (finding "extremely poor work history" when plaintiff went years unemployed between jobs).

[73] *See Tackett v. Apfel*, 180 F.3d 1097, 1098 (9th Cir. 1999) (holding that the Commissioner's decision cannot be affirmed "simply by isolating a specific quantum of supporting evidence").

## C. Lay Witness Testimony: Plaintiff established error.

The ALJ assigned little weight to Plaintiff's mother's statements because they essentially mirrored those of Plaintiff. Because these statements are similar to Plaintiff's symptom reports, and the ALJ improperly discounted Plaintiffs symptom reports, the ALJ failed to provide a germane reason for discounting Plaintiff's mother's statements.[74]

## D. RFC and Step Five: The ALJ must reevaluate.

Plaintiff argues the ALJ erred at step five by relying on an incomplete hypothetical. Because the ALJ's RFC was based on an erroneous factual finding and weighing of the medical evidence and Plaintiff's symptom reports, the ALJ on remand is to reassess Plaintiff's RFC and proceed with a new step-five analysis, if necessary.

## E. Listing Impairments: The ALJ must reevaluate.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listing 14.09, singly, or in combination. The Court declines to address

---

[74] An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).[74]

this argument because the analysis of the issue depends, in part, on the ALJ's evaluation of the medical-opinion evidence and Plaintiff's symptom reports.

## F. Remand for Further Proceedings

As explained above, the ALJ erred. Plaintiff submits a remand for payment of benefits is warranted. However, even if the entire medical opinion of Dr. Lowe is given great weight, the record would not remain free of conflicts, as Dr. Toews opined that Plaintiff's concentration, persistence, and ability to maintain pace would be mild; and no limitation on understanding, remembering, or applying information. Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[75]

On remand, the ALJ is to reweigh the medical-opinion evidence and reevaluate RFC, Step Five, and Listing Impairments, taking into consideration Plaintiff's symptom reports.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to substitute Andrew M. Saul, Commissioner of the Social Security Administration, as the Defendant.

---

[75] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED IN PART and DENIED IN PART**.

3.    The Commissioner's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED IN PART** and **DENIED IN PART**.

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

5.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 4th day of March 2020.

_____s/Edward F. Shea_____.
EDWARD F. SHEA
Senior United States District Judge